UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNY JOSE MEDINA ALVAREZ, | No. 1:26-cv-01293-DC-CKD (HC) |
| Petitioner, | |
| v. | ORDER GRANTING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER AS CONVERTED TO A MOTION FOR A PRELIMINARY INJUNCTION |
| CHRISTOPHER CHESTNUT, et al., | |
| Respondents. | |
| | (Doc. No. 5) |

This matter is before the court on Petitioner's motion for a temporary restraining order (Doc. No. 5), filed in conjunction with his petition for a writ of habeas corpus brought under 28 U.S.C. § 2241, challenging his ongoing immigration detention. (Doc. No. 1.) In that motion, Petitioner states he was detained on October 7, 2025, over 120 days before filing his motion. Petitioner does not explain why he did not seek injunctive relief sooner. Notably, Local Rule 231(b) states: "In considering a motion for a temporary restraining order, the Court will consider whether the applicant could have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief by motion for temporary restraining order." L.R. 231(b). Because Petitioner's motion for a temporary restraining order is untimely, the court will convert that motion to a motion for a preliminary injunction. For the reasons explained below, the court will grant Petitioner's motion for a preliminary injunction.

1

# BACKGROUND

**A.    Factual Background**

Petitioner Denny Jose Medina Alvarez is a Venezuelan national. (Doc. No. 1 at ¶ 21.) On or about October 3, 2022, Petitioner entered the United States without inspection and was apprehended by United States Border Patrol. (*Id.*) Petitioner was briefly detained and then released on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5). (*Id.*) Petitioner was told to report to Immigration and Customs Enforcement ("ICE") within sixty days of his release from detention. (*Id.*) Petitioner did so, and ICE gave him a report date of October 7, 2025. (*Id.*) Petitioner then settled in Dallas, Texas, and moved in with his brother and sister's families. (*Id.*) Petitioner is the sole provider for his daughter and step-son and works as an assistant to an electrician. (*Id.* at ¶ 24.)

On November 20, 2024, Petitioner submitted an I-821 – Application for Temporary Protected Status ("TPS") pursuant to the 2023 TPS designation of Venezuela ("2023 Designation"). (Doc. No. 1-1 at 2.) On December 30, 2024, Petitioner received an approval notice from U.S. Customs and Immigration Services ("USCIS") confirming his TPS status and indicating that it was valid through April 2, 2025. (*Id.*) On May 19, 2025, Petitioner re-registered and received a notice confirming his re-registration for TPS pursuant to the January 17, 2025 extension of the 2023 Designation made by then-Department of Homeland Security ("DHS") Secretary Alejandro Mayorkas, which extended the TPS designation through October 2, 2026 ("2025 Extension"). (*Id.*; Doc. No. 10-1 at 3 at 4.)

On October 7, 2025, Petitioner reported to the ICE office in Dallas, Texas, and was then detained. (Doc. No. 1 at ¶ 25.) Petitioner's family is experiencing financial strain due to his absence. (*Id.* at ¶ 26.) Petitioner is currently detained at California City Detention Facility. (*Id.* at ¶ 11.)

/////
/////
/////
/////

**B.     Procedural Background**

On February 13, 2026, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] (Doc. No. 1.) Petitioner asserts the following claims against Respondents Christopher Chestnut, Sergio Albarran, Todd M. Lyons, Kristi Noem, and Pamela Bondi: (1) violation of the Immigration and Nationality Act ("INA") – 8 U.S.C. § 1254a; (2) violation of the Due Process Clause of the Fifth Amendment to the Constitution (Substantive Due Process); and (3) violation of the Due Process Clause of the Fifth Amendment to the Constitution (Procedural Due Process). (*Id.* at 16–19.)

Also on February 13, 2026, Petitioner filed a motion for a temporary restraining order. (Doc. No. 5.) In his motion, Petitioner seeks immediate release from custody. (*Id.* at 23.) On February 19, 2026, Respondents filed an opposition to Petitioner's motion. (Doc. No. 10.) On February 20, 2026, Petitioner filed a reply thereto. (Doc. No. 12.)

**LEGAL STANDARD**

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. 7, 20 (2008). The likelihood of success on the merits is the most important *Winter* factor. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

---

[1] Initially, three separate Petitioners filed the petition for a writ of habeas corpus and were parties in the same action. (Doc. No. 1.) On February 13, 2026, Respondents filed a motion to sever for improper joinder of the Petitioners. (Doc. No. 6.) On February 17, 2026, this court granted Respondents' motion to sever, finding the joinder of Petitioners in one habeas action to be improper, and ordered the Clerk of the Court to open a new case for Petitioner in this action. (Doc. No. 7.)

3

1    A party seeking injunctive relief must make a showing on all four prongs of the *Winter*
2   factors to obtain injunctive relief. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th
3   Cir. 2011); *see Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) ("A preliminary injunction
4   is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a
5   clear showing, carries the burden of persuasion.'") (quoting *Mazurek v. Armstrong*, 520 U.S. 968,
6   972 (1997)). A district court may consider "the parties' pleadings, declarations, affidavits, and
7   exhibits submitted in support of and in opposition to the [motion for injunctive relief]." *Cal. Rifle*
8   *& Pistol Ass'n, Inc. v. L.A. Cnty. Sheriff's Dep't*, 745 F. Supp. 3d 1037, 1048 (C.D. Cal. 2024);
9   *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues
10  "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los*
11  *Angeles*, 119 F. Supp. 3d 1177, 1185 (C.D. Cal. 2015).

**ANALYSIS**

**A.     Likelihood of Success on the Merits**

      1.     <u>Petitioner's Claim under 8 U.S.C. § 1254a</u>

          a.     *TPS Statutory and Regulatory Framework*

Pursuant to 8 U.S.C. § 1254, the DHS Secretary "may designate a foreign state for TPS when nationals of that state cannot return there safely due to armed conflict, natural disaster, or other 'extraordinary and temporary conditions.'" *Nat'l TPS All. v. Noem*, 150 F.4th 1000, 1010 (9th Cir. 2025) (citing 8 U.S.C. § 1254a(b)(1)(c)). This designation is permitted unless the Secretary "finds that permitting the [noncitizens][2] to remain temporarily in the United States is contrary to the national interest of the United States." *Id.* The DHS Secretary selects the TPS designation period for a foreign state for a period of between six and eighteen months. *Nat'l TPS All.*, 150 F.4th at 1010 (citing 8 U.S.C. § 1254a(b)(2)). "Such a designation permits certain nationals of the foreign state, who have continuously resided in the United States since the effective date of designation, to register for employment authorization and protection from deportation for the

---

[2] This opinion uses the term "noncitizen" as equivalent to the statutory term "alien," in keeping with recent preferred nomenclature. *Avilez v. Garland*, 69 F.4th 525, 527 n.1 (9th Cir. 2023) (collecting cases).

4

duration of the TPS period." *Nat'l TPS All.*, 150 F.4th at 1010 (citing 8 U.S.C. § 1254a(a)(1), (b)(2)).

On March 9, 2021, then DHS Secretary Mayorkas designated Venezuela for TPS, effective March 9, 2021, through September 9, 2022, citing "severe political and economic crisis" in Venezuela. *Nat'l TPS All.*, 150 F.4th at 1011 (citing Designation of Venezuela for Temporary Protected Status and Implementation of Employment Authorization for Venezuelans Covered by Deferred Enforced Departure, 86 Fed. Reg. 13574, 13574 (Mar. 9, 2021)). On September 8, 2022, Secretary Mayorkas extended the Venezuelan TPS for eighteen months, from September 10, 2022 through March 10, 2024. *Nat'l TPS All.*, 150 F.4th at 1011 (citing Extension of the Designation of Venezuela for Temporary Protected Status, 87 Fed. Reg. 55024, 55024 (Sept. 8, 2022)). The extension allowed beneficiaries of the 2021 TPS designation of Venezuela to extend work authorization and protection from removal. *Id.* On October 3, 2023, Secretary Mayorkas redesignated Venezuela for TPS and extended the 2021 TPS designation of Venezuela by eighteen months. *Nat'l TPS All.*, 150 F.4th at 1011 (citing Extension and Redesignation of Venezuela for Temporary Protected Status, 88 Fed. Reg. 68130, 68130 (Oct. 3, 2023)). Beneficiaries of the 2021 TPS designation of Venezuela could extend their status through September 5, 2025, and eligible Venezuelan nationals—those who resided in the United States continuously since July 31, 2023—could register for the 2023 TPS Designation. *Id.* The registration period for the 2023 TPS Designation began on October 3, 2023. *Id.* The 2023 TPS Designation was in effect through April 2, 2025. *Id.* Secretary Mayorkas issued a notice on January 17, 2025, that consolidated the two TPS filing tracks and allowed beneficiaries of both the 2021 and 2023 TPS Designation to re-register for an eighteen-month extension that was in effect through October 2, 2026. *Nat'l TPS All.*, 150 F.4th at 1012 (citing Extension of the 2023 Designation of Venezuela for Temporary Protected Status, 90 Fed. Reg. 5961–62 (Jan. 17, 2025)).

On February 3, 2025, current DHS Secretary Kristi Noem issued a notice to vacate the former DHS Secretary's extension of the 2023 TPS Designation and the consolidation of the two filing tracks for 2021 and 2023 designations. *Nat'l TPS All.*, 150 F.4th at 1012 (citing Vacatur

Notice, 90 Fed. Reg. 8805, 8806). On February 5, 2025, Secretary Noem issued a notice of termination of the 2023 TPS Designation, effective 60 days later on April 7, 2025. *Nat'l TPS All.*, 150 F.4th at 1012 (citing Termination Notice, 90 Fed. Reg. at 9040).

### b.  *Legal Challenge to Secretary Noem's Vacatur and Termination of the TPS Designation*

In response to Secretary Noem's termination of the Venezuela TPS, the National TPS Alliance ("NTPSA"), a nonprofit organization representing Venezuelan TPS holders nationwide, and seven individual TPS holders sued Secretary Noem, DHS, and the United States in the U.S. District Court for the Northern District of California. *See Nat'l TPS All. v. Noem*, 798 F. Supp. 3d 1108 (N.D. Cal. 2025), *aff'd*, No. 25-5724, 2026 WL 226573 (9th Cir. Jan. 28, 2026). In that case, on September 5, 2025, the court issued an order granting the plaintiffs' motion for summary judgment and denying the Government's motion for summary judgment and motion to dismiss. *Id.* at 1116. Of particular relevance here are the plaintiffs' claims under the Administrative Procedure Act ("APA") challenging Secretary Noem's vacatur and termination of the Venezuela TPS. *Id.* The district court found that Secretary Noem (1) lacked the statutory authority to vacate the previous DHS Secretary's extension of the 2023 TPS Designation; and (2) exceeded her authority when she purported to invalidate documentation that had already been issued pursuant to the extension. *Id.* at 1144–47. Accordingly, the district court vacated DHS Secretary Noem's actions under Section 706 of the APA and entered final judgment in favor of plaintiffs on their Venezuela TPS vacatur and termination APA claims, noting the "significant rights of the Venezuelan . . . TPS holders who have lost or will lose status in the absence of relief . . . ." *Id.* at 1160–62, 64 (also holding APA vacatur of DHS decisions concerning Venezuelan temporary protected status holders were "nationwide in scope" and distinguishing APA vacatur from nationwide injunctions).

On October 3, 2025, the Supreme Court stayed the district court's order "pending the disposition of the Government's appeal in the United States Court of Appeals for the Ninth Circuit and disposition of a petition for a writ of certiorari, if such writ is timely sought." *Noem v. Nat'l TPS All.*, 146 S. Ct. 23, 24 (2025).

On December 10, 2025, the district court granted plaintiff's motion for declaratory relief and declared that "(1) the vacatur of the January 17, 2025, TPS extension for Venezuela was unlawful as was (2) the termination of Venezuela's 2023 TPS designation on February 5, 2025." *Nat'l TPS All. v. Noem*, No. 25-cv-01766-EMC, 2025 WL 3539156, at *2 (N.D. Cal. Dec. 10, 2025). The district court stated that "the declaratory relief issued here may help preserve the pending status quo for individual members of the NTPSA." *Id.* The district court stayed the order for two weeks to allow the Government to appeal, which they did, and to request a longer stay from the Ninth Circuit—which they did not. *See id.* at *1.

On January 28, 2026, the Ninth Circuit affirmed the district court's September 5, 2025 order on appeal. The Ninth Circuit held

> that Secretary Noem exceeded her authority under the TPS statute by attempting to terminate Venezuela's TPS, as extended by the 2025 Extension. Because the 2025 Extension remains in effect until October 2, 2026, Secretary Noem's attempt to terminate Venezuela's TPS with an effective date of April 7, 2025, violated the plain text of the TPS statute.

*Nat'l TPS All. v. Noem*, No. 25-5724, 2026 WL 226573, at *16 (9th Cir. Jan. 28, 2026). The court further noted that "relief cannot be limited to NTPSA's members because [p]laintiffs do not simply challenge the application of the vacaturs or termination to them, they challenge the Secretary's very authority to act," and that "the proper remedy under APA § 706(2) is to set aside her actions and restore the status quo." *Id.* at *17.

As of the date of this order, there has not been a petition for a writ of certiorari filed as to the appeal of the district court's September 5, 2025 order, and the appeal to the Ninth Circuit of the December 10, 2025 order remains pending. With the statutory and regulatory background and the status of the legal challenge to Secretary Noem's actions in mind, the court turns to Petitioner's detention.

        *c.*    *Lawfulness of Petitioner's Detention*

Petitioner argues that his detention is in violation of Section 1254a of the TPS statute. (Doc. Nos. 1 at 13–14; 5 at 15–17.) Petitioner is a recipient of TPS pursuant to the 2023 TPS

1   Designation, which was valid through April 2, 2025.[3] (Doc. No. 1-1 at 2.) On May 19, 2025,
2   Petitioner timely sought to extend his TPS, pursuant to the 2025 Extension that was to remain in
3   effect through October 2, 2026. (*Id.* at 4); *see also* Extension of the 2023 Designation of
4   Venezuela for Temporary Protected Status, 90 Fed. Reg. 5961–62 (Jan. 17, 2025).

   As discussed above, Secretary Noem's vacatur and termination of Venezuela's TPS has been set aside by the declaratory judgment issued on December 10, 2025 in *National TPS Alliance v. Noem*, No. 25-cv-01766-EMC, 2025 WL 3539156 (N.D. Cal. Dec. 10, 2025). In view of that district court's grant of declaratory relief and Petitioner's timely re-registration for extension of TPS pursuant to the 2025 TPS extension, Petitioner likely retains his TPS until October 2, 2026, so long as Petitioner remains eligible for TPS. *See* 8 U.S.C. § 1254a(c)(1)(A)(i)–(iii); *Nat'l TPS All.*, 2025 WL 3539156, at *2 ("[T]he declaratory relief issued here may help preserve the pending status quo for individual members of the NTPSA.").

   Further, in light of Petitioner's TPS, Petitioner is likely to succeed on the merits of his claim that he was detained in violation of Section 1254a of the TPS statute. Critically, Section 1254a of the TPS statute states, "[a][] [noncitizen] provided temporary protected status under this section shall not be detained by the Attorney General on the basis of the [noncitizen]'s immigration status in the United States." 8 U.S.C. § 1254a(d)(4). The statute is clear—an individual provided TPS must not be detained based on their immigration status. *Id.* Respondents provide no other basis or justification for detaining Petitioner, and therefore, Petitioner has shown that his arrest and detention likely violates Section 1254a of the TPS statute. Accordingly, Petitioner is likely to succeed on the merits of his claim that his detention is unlawful. *See Gonzalez v. Noem*, No. 5:26-cv-00357-JWH-AJR, 2026 WL 332223, at *2 (C.D. Cal. Feb. 5, 2026); *J.G.M.F. v. Wofford*, No. 1:26-cv-00068-DJC-CKD, 2026 WL 88985, at *1 (E.D. Cal. Jan. 12, 2026).

/////

---

[3] Though the approval notice has a stated expiration of April 2, 2025 for the TPS granted to Petitioner, the approval notice also states that "[i]f the TPS designation is extended, you must re-register with [USCIS] within the time period designated for re-registration," which Petitioner did. (Doc. No. 1-1 at 2.)

### 2. Petitioner's Procedural Due Process Claim

Additionally, this court has previously addressed the legal issues raised by Petitioner's procedural due process claim (Doc. No. 1 at 17–19). Specifically, this court has found that the Due Process Clause requires that, in order for the government to re-detain a noncitizen who has been previously released on bond or conditional parole under 8 U.S.C. § 1226(a), or humanitarian parole under 8 U.S.C. § 1182(d)(5), the government must provide a pre-deprivation bond hearing before a neutral arbiter at which the noncitizen's eligibility for bond must be considered. *See Selis Tinoco v. Noem*, 1:25-cv-01762-DC-JDP, 2025 WL 3567862 (E.D. Cal. Dec. 14, 2025) (granting motion for temporary restraining order and immediate release of the petitioner based on his likelihood of success on the merits of his due process claim); *Labrador-Prato v. Noem*, 1:25-cv-01598-DC-SCR, 2025 WL 3458802 (E.D. Cal. Dec. 2, 2025) (same); *D.L.C. v. Wofford*, 1:25-cv-01996-DC-JDP, 2026 WL 25511 (E.D. Cal. Jan. 5, 2026) (same); *Altin v. Chestnut*, No. 1:26-cv-00792-DC-CSK, Doc. No. 8 (E.D. Cal. Feb. 5, 2026) (granting motion for temporary restraining order and habeas petition as to the petitioner's due process claim).

On February 17, 2026, the court issued an order directing Respondents to address whether there are any factual or legal issues in this case that materially distinguish it from this court's prior orders in *Selis Tinoco*, *Labrador-Prato*, and *D.L.C*. (Doc. No. 7.) On February 19, 2026, Respondents filed their opposition stating they oppose Petitioner's motion on the same grounds as those addressed by the court in the aforementioned cases, but acknowledge that "there are no factual or legal issues in this case that render it substantively distinct from the Court's prior orders." (Doc. No. 10 at 4–5.)

Accordingly, Petitioner has demonstrated he is likely to succeed on the merits of his claims that he is detained in violation of both 8 U.S.C. 1254a and the Due Process Clause of the Fifth Amendment.

**B. Irreparable Harm**

Petitioner will suffer irreparable harm in the absence of a temporary restraining order. Broadly speaking, "[d]eprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citation omitted.) Further, the Ninth

Circuit has recognized the "irreparable harms imposed on anyone subject to immigration detention" including "the economic burdens imposed on detainees and their families as a result of detention . . . ." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Indeed, beyond the inherent harm caused by Petitioner's detention, Petitioner's family is experiencing financial strain in his absence. (Doc. No. 1 at ¶ 26.)

Therefore, the second *Winter* factor weighs in favor of granting Petitioner's request for injunctive relief.

### C. Balance of the Equities and Public Interest

The court now turns to the last two *Winter* factors. The balance of the equities and public interest analyses merge when the government is the opposing party, as is the case in this action. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

"Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [ ] the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (internal quotation marks and citation omitted). Though Respondents have an interest in enforcing immigration laws, Respondents cannot reasonably assert that the public and government will be harmed in any legally cognizable sense by being enjoined from detaining Petitioner in violation of the applicable law, which is the case here. This relief also benefits the public because "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022). Accordingly, the court finds that the balance of equities and public interest weigh in favor of injunctive relief and consequently, all four *Winter* factors weigh in favor of Petitioner.

### D. Security

Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief 'only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Fed. R. Civ. P. 65(c)).

10

"Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" *Id.* (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Johnson*, 572 F.3d at 1086 (quoting *Jorgensen*, 320 F.3d at 919). Neither party addresses the issue of security in their briefing.

The court finds that no security is required here. Courts regularly waive security in cases like this one. *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Lepe v. Andrews*, No. 25-cv-01163-KES-SKO, 2025 WL 2716910, at *10 (E.D. Cal. Sep. 23, 2025); *Pinchi v. Noem*, No. 25-cv-05632- RMI-RFL, 2025 WL 1853763, at *4 (N.D. Cal. Jul. 4, 2025).

## CONCLUSION

Accordingly,

1. Petitioner's motion for a temporary restraining order, converted to a motion for a preliminary injunction (Doc. No. 5) is GRANTED as follows:

    a. Petitioner Denny Jose Medina Alvarez shall be released immediately from Respondents' custody with the same conditions he was subject to immediately prior to his detention on October 7, 2025. Respondents shall not impose any additional restriction on him, such as electronic monitoring, unless that is determined to be necessary at a future pre-deprivation/custody hearing;

    b. Petitioner shall not be re-detained due to his immigration status until the 2025 Extension expires or Petitioner is no longer eligible for TPS pursuant to the TPS statute;

    c. If the government seeks to re-detain Petitioner after Petitioner no longer has TPS, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter, at which Petitioner's eligibility for bond must be considered; and

/////

11

    2.    This matter is referred to the assigned magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated: **March 3, 2026**

Dena Coggins
United States District Judge